IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHERIE H.,[1]

                Plaintiff,

     v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,[2]

                Defendant.

Case No. 3:20-cv-02263-SB

**OPINION AND ORDER**

---

**BECKERMAN, U.S. Magistrate Judge.**

Cherie H. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of her applications for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the

Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. §

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] Kilolo Kijakazi became the acting Commissioner of the Social Security Administration on or about July 9, 2021 and is substituted for Andrew Saul as the defendant. *See* FED. R. CIV. P. 25(d)(1).

PAGE 1 – OPINION AND ORDER

405(g), and the parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court affirms the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

## I.    PLAINTIFF'S APPLICATIONS

Plaintiff was born in early August 1963, making her fifty-three years old on August 16, 2016, her alleged disability onset date. (Tr. 113, 147.) Plaintiff completed one year of college

and has past relevant work experience as a receptionist and home attendant. (Tr. 36, 49, 297.) In her applications, Plaintiff alleged disability due to migraines, anxiety, depression, seizures, low blood sugar, a "steel rod" in her back, and pain in her back, knees, right hip, and neck. (Tr. 114, 148.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on October 31, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 22.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on January 28, 2020. (Tr. 46-82.) On February 28, 2020, the ALJ issued a written decision denying Plaintiff's applications. (Tr. 22-37.) On October 13, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-6.) Plaintiff now seeks judicial review of the ALJ's decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

///

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 22-37.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 16, 2016, her alleged onset date. (Tr. 24.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "[C]ongenital scoliosis status-post remote Harrington rod fusion, lumbar degenerative disc disease, cervical degenerative disc disease, and migraine headaches." (Tr. 25.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (Tr. 29.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: Plaintiff can "occasionally climb, balance, stoop, kneel, crouch, and crawl." (Tr. 30.) At step four, the ALJ concluded that Plaintiff was not disabled because she retained the RFC to perform her past relevant work as a receptionist. (Tr. 36.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by failing to provide (1) clear and convincing reasons for discounting Plaintiff's symptom testimony; and (2) legally sufficient

reasons for discounting the opinion of Plaintiff's examining psychologist, Lisa Davidson, Ph.D. ("Dr. Davidson"). (Pl.'s Opening Br. at 19-27.) As explained below, the Court concludes that the Commissioner's decision is free of harmful legal error and supported by substantial evidence in the record. Accordingly, the Court affirms the Commissioner's denial of Plaintiff's applications for benefits.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th

Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th

Cir. 1997)).

    **B.**    **Analysis**

    There is no evidence of malingering here and the ALJ determined that Plaintiff provided

objective medical evidence of underlying impairments which might reasonably produce the

symptoms alleged. (*See* Tr. 31, the ALJ determined that Plaintiff's "medically determinable

impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was

therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom

testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ met that standard

here.

        **1.**    **Specificity Requirements**

    Plaintiff argues that the ALJ erred in discounting her testimony because the ALJ offered

only a "summary of findings" and "fail[ed] to state a clear and convincing reason for rejecting

Plaintiff's testimony." (Pl.'s Opening Br. at 25.) In support, Plaintiff notes that in *Lambert v.

Saul*, 980 F.3d 1266 (9th Cir. 2020), the Ninth Circuit explained that "[p]roviding a summary of

medical evidence . . . is not the same as providing clear and convincing reasons for finding the

claimant's symptom testimony not credible." (Pl.'s Opening Br. at 25, quoting *Lambert*, 980

F.3d at 1278).

    Plaintiff is correct that Ninth Circuit case law "requires the ALJ to specifically identify

the testimony from a claimant she or he finds not to be credible and explain what evidence

undermines that testimony." *Lambert*, 980 F.3d at 1277 (simplified); *see also Burrell v. Colvin*,

775 F.3d 1133, 1138 (9th Cir. 2014) (explaining that general findings are insufficient because the

ALJ "must identify what testimony is not credible and what evidence undermines the claimant's

complaints," and concluding that the ALJ's findings were "insufficient to meet 'our requirements

of specificity'") (simplified). That does not mean that an ALJ must "perform a line-by-line exegesis of the claimant's testimony," or "draft dissertations when denying benefits." *Lambert, 980 F.3d at 1277*. But Ninth Circuit precedent "plainly requires" that an ALJ do more than "offer[] non-specific conclusions that [the claimant's] testimony [is] inconsistent with [certain evidence]." *Id.* (citations omitted).

    *Lambert* and cases applying *Lambert* are instructive as to the level of specificity that Ninth Circuit case law requires. In *Lambert*, the ALJ cited four high-level reasons for discounting the claimant's testimony:

> First, [the claimant] had 'not generally received the type of medical treatment one would expect for a totally disabled individual.' Second, the 'record reflect[ed] significant gaps in [the claimant's] history of treatment and relatively infrequent trips to the doctor for the allegedly disabling symptoms.' Third, [the claimant's] 'use of medications does not suggest the presence of impairments which is more limiting than found in this decision.' And finally, 'medications have been relatively effective in controlling [the claimant's] symptoms.'

*Lambert, 980 F.3d at 1270*. The Ninth Circuit held that these four reasons were inadequate because they did not identify what parts of the claimant's testimony were not credible and why, and the ALJ's discussion was "brief" and equated to offering general, non-specific conclusions. *Id.* at 1277.

    Similarly, in *Wade v. Saul, 850 F. App'x 568, 569 (9th Cir. 2021)*, the Ninth Circuit explained that "[s]ummarizing [the claimant's] testimony about her limitations from her mental impairments, and later mentioning that her symptoms improved with medication and treatment, does not provide clear and convincing *reasons* to discredit that testimony." *Id.* (citing *Lambert, 980 F.3d at 1277-78*). The Ninth Circuit therefore held that the ALJ committed "reversible error." *Id.*

    By contrast, in *Young v. Saul, 845 F. App'x 518, 519 (9th Cir. 2021)*, the Ninth Circuit rejected the claimant's "argument that, by failing expressly to mention [the claimant's] assertion

that his back pain created a need for him to take weeks off from work at a time, the ALJ thereby

overlooked that testimony and failed to give reasons to discount it." *Id.* The Ninth Circuit

explained that the "ALJ was not required to mention explicitly, in his ruling, each detail of [the

claimant's] testimony, such as the need to take off weeks at a time from work." *Id.* at 520 (citing

*Lambert*, 980 F.3d at 1277). The Ninth Circuit held that the ALJ did not err because he

"specifically cited [the claimant's] written statements and testimony as among the items he had

'carefully consider[ed],'" and he gave specific reasons why he did not credit [the claimant's]

claims concerning the 'limiting effects' of [the claimant's] symptoms, including his 'back and

knee pain.'" *Id.* at 519-20. Those reasons included inconsistent objective medical evidence,

minimal treatment before the claimant's date last insured, which the ALJ found did not support

the claimant's "subjective complaints," and a non-examining physician's conflicting opinion. *Id.*

at 520.

This case is similar to *Young* and satisfies the Ninth Circuit's specificity requirements.

Like *Young*, where the ALJ provided specific reasons as to why he did not fully credit the

claimant's testimony about the "limiting effects" of his symptoms, such as "back and knee pain,"

the ALJ here cited certain activities (discussed in more detail below) that "indicate that

[Plaintiff's] pain is not as debilitating as she alleges," and "suggest[] that [Plaintiff] is less

limited by her pain than she alleges." (Tr. 33.) The ALJ also determined that the "regularity of

normal findings on physical examination" and notations from certain treatment notes were

"inconsistent with the degree of pain and debility that [Plaintiff] alleges," such as her

endorsement of "constant, excruciating pain" and "constant, severe pain." (*Id.*) The ALJ

proceeded to cite treatment notations (discussed in more detail below) that appeared inconsistent

with Plaintiff's testimony about physical therapy. (*Id.*) Furthermore, the ALJ noted that

Plaintiff's "delay in treatment with a neurologist" and "declination of a prophylactic trial" are "contrary to her allegations of two to three day-long or longer migraines that confine her to the bed." (Tr. 34.)

Given these findings, the Court concludes that the ALJ met the Ninth Circuit's specificity requirements.

### 2.    Inconsistent Testimony

As noted above, the ALJ discounted Plaintiff's testimony on the ground that her testimony that physical therapy was not helpful was inconsistent with her statements to providers. (*See* Tr. 33, "[T]reatment notes also contained notations inconsistent with the degree of pain and debility the claimant alleges. . . . [For example], while she testified that physical therapy was not helpful, she often told providers that physical therapy [had] improved her back pain. She even stated that her pain worsens if she misses physical therapy." (citing Tr. 393, 1006, 1008)). An ALJ may discount a claimant's testimony based on inconsistent testimony about, among other things, the effectiveness of treatment, activity level, or capabilities. *See Howell v. Saul*, 833 F. App'x 470, 471 (9th Cir. 2021) (holding that the ALJ provided clear and convincing reasons for discounting the claimant's testimony, including that the claimant's "testimony that medication was not effective was inconsistent with her statements to providers"); *Harrington v. Saul*, 859 F. App'x 135, 136 (9th Cir. 2021) (holding that the ALJ provided clear and convincing reasons for discounting the claimant's testimony, including that the claimant "gave inconsistent testimony concerning her activities in 2009 and admitted that she was more capable in 2009 than in later years").

The Commissioner argues that the ALJ appropriately discounted Plaintiff's testimony based on her inconsistent testimony regarding whether physical therapy was helpful. (Def.'s Br. at 5.) While summarizing the medical record in her opening brief, Plaintiff stated that she

"initially found physical therapy helpful, and [reported] her symptoms worsen without [such] treatment, but later reported noticing little improvement with [physical] therapy with persistent, constant pain." (Pl.'s Opening Br. at 12) (simplified). Notably, however, Plaintiff did not argue the ALJ erred in discounting her testimony based on any inconsistent statements; rather, Plaintiff challenged only the specificity of the ALJ's analysis and the ALJ's reliance on her activities and "failure to follow through with medical appointments and referrals[.]" (Pl.'s Opening Br. at 25-26.) Further, in her reply brief, Plaintiff does not address or dispute the Commissioner's assertion that the ALJ appropriately relied on conflicting testimony about physical therapy. (*See* Pl.'s Reply at 1-2.)

Given the case law, procedural facts, and record evidence discussed above, the ALJ did not err in discounting Plaintiff's testimony based on inconsistent statements regarding whether past physical therapy was helpful. *See generally Donna B. v. Comm'r, Soc. Sec. Admin.*, No. 3:18-cv-00892-MK, 2019 WL 3231740, at *9 (D. Or. July 18, 2019) ("Plaintiff did not file a reply to respond to the Commissioner's argument and therefore has waived the argument on this issue.").

The Court concludes that the ALJ's finding was reasonable and supported by substantial evidence.[3] (*Compare* Tr. 53, 58, Plaintiff informed the ALJ that her back pain and condition is "really bad" and causes her to be "bedridden most of the days," and she is no longer engaged in

---

[3] The Court notes that Plaintiff also appeared to provide inconsistent statements to the ALJ about where she previously lived. (*Compare* Tr. 47, "And prior to [living in San Diego], were you living in Hawaii? A. No." *and* Tr. 48, "Were you living outside of San Diego, in Hawaii at any time? A. No." *with* Tr. 61-62, "In [Dr. Davidson's] report [she] indicates that you lived in Hawaii and you raised two children and then return[ed] to California. Is that correct? A. Yes. Q. Why did you tell me you never lived in Hawaii a few moments ago? A. I didn't say that. Q. You did say that. A. I did? Q. I asked you if you live[d] in Hawaii and you said no, you never lived in Hawaii. A. I don't remember saying that. . . . I lived in Hawaii. I moved over there in 1984.").

physical therapy because it was "not helping," *and* Tr. 1499, October 15, 2018, Plaintiff reported she participated in physical therapy in "the past without improvement," *and* Tr. 533, March 23, 2018, Plaintiff reported that physical therapy "did not help," *with* Tr. 431, 876, August 1 and August 12, 2016, Plaintiff attended physical therapy and reported that her lower back was sore "but [she was] doing much better with [physical therapy]," and the physical therapist noted that Plaintiff had made "moderate progress in terms of pain relief [and] strength gains in the lumbo-pelvic region"; Tr. 393, November 28, 2016, Plaintiff reported that "[s]he does feel like [physical therapy] is helpful for her problems" and noted that "if she misses [physical therapy] her symptoms worsen again"; Tr. 570, 643, December 9 and 16, 2016, a provider noted that Plaintiff reported that physical therapy "has been helping with her chronic pain and increasing her exercise tolerance"; Tr. 466, January 5, 2017, Plaintiff attended physical therapy and reported that her knee was sore "but she [was] feeling stronger since [the] start of [physical therapy]"; Tr. 628, May 24, 2017, "Requesting PT referral be added for right knee. [Plaintiff] feels that it is helping greatly."; Tr. 621, June 16, 2017, "She is also currently undergoing physical therapy for chronic hip pain. States that it is helping."; Tr. 1006, September 19, 2018, Plaintiff reported that she was "feeling better" and performed "45 min[utes] of cardio this morning," and the physical therapist noted that Plaintiff "tolerated treatment well" and was "[p]rogressing with [her] treatment program as expected"; Tr. 1008, October 2, 2018, during physical therapy, Plaintiff reported that she was "[f]eeling better" and recently returned from a "3-day vacation").

### 3.    Plaintiff's Reported Activities

The ALJ also discounted Plaintiff's symptom testimony on the ground that her "reported activities indicate that [her] pain is not as debilitating as she alleges," her "recreational activities . . . suggested that [she] is less limited by her pain than she alleges," and "the activities she reported to her providers demonstrate that [her] spinal impairments and their effects are not

as intense, persistent or limiting as she alleges." (Tr. 33.) Plaintiff argues that the ALJ erred in

discounting her testimony on this ground. (Pl.'s Opening Br. at 25-26.) As explained below, the

Court disagrees.

An ALJ may discount a claimant's testimony based on activities that are incompatible

with the claimant's testimony regarding the severity of her symptoms. *See Burrell*, 775 F.3d at

1137-38 (explaining that "[i]nconsistencies between a claimant's testimony and the claimant's

reported activities provide a valid reason for an adverse credibility determination"); *Garrison*,

759 F.3d at 1016 (stating that a claimant's activities have "bearing on [his or her] credibility" if

the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations"). Here,

the ALJ determined that Plaintiff's reported activities, such as training to become and working as

a massage therapist, working as a caregiver for her mother, going out dancing, and attending

festivals and concerts, are incompatible with her pain testimony and claimed limitations.

(Tr. 33.)

Plaintiff argues that the ALJ erred by "fail[ing] to show that [her] occasional activities,

which were not performed every day, . . . contradict her testimony[.]" (Pl.'s Opening Br. at 26.)

This argument is unpersuasive. The ALJ's finding was reasonable and supported by substantial

evidence. Specifically, the ALJ explained that Plaintiff's reported activities are inconsistent with

her testimony about her "degree of pain and debility" and the intensity and limiting effects of her

back impairments and pain, and suggest that she is "less limited by her pain that she alleges."

(Tr. 33.) Before making these findings, the ALJ described the most significant portions of

Plaintiff's testimony regarding her debilitating pain and functional limitations, including that she

is often restricted to "her bed," she cannot "sit through a 30-miute television show without

discomfort or pain," and she "spends most of her time laying down and/or sleeping." (Tr. 31; *see*

*also* Tr. 53, Plaintiff stated that her pain has "got really bad over time" and she is "bedridden most of the days").

It was reasonable for the ALJ to conclude—based on the substantial evidence that follows, which the ALJ cited—that Plaintiff's testimony about her pain and functional limitations is inconsistent with her reported activities. (*See* Tr. 631, March 1, 2017, Plaintiff reported that she had been "taking [care of] her mom [who] has not been doing very well in terms of her health"; Tr. 678, May 18, 2018, Plaintiff reported that she had "ambitions to pursue training in massage" and "now works caring for her mother who has cancer [and performs] some real estate work"; Tr. 725, August 1, 2018, Plaintiff presented for a follow up appointment with her provider and "talk[ed] most of [the] appointment about her career as a massage therapist and goals for school"; Tr. 733, August 13, 2018, Plaintiff reported that she attended a "Tahitian festival with her daughter," a "concert at Del Mar," and "dance church," she "needs to work (in massage)" but "had to be careful what she says" because her friend was "helping [her] get disability" and "what she says . . . may disqualify her from getting disability," and her friend "encourage[d] her to come to therapy because it 'looks good' when you apply for disability," and Plaintiff's provider noted that Plaintiff "does not have a severe mental illness and mostly has characterological issues"; Tr. 1224, October 15, 2018, Plaintiff reported that her back hurt after she danced at a festival over the weekend and she attends therapy because her friend "said she should while applying for disability").

In sum, the ALJ did not err in discounting Plaintiff's testimony based on her reported activities.

### 4.    Conclusion

For these reasons, the Court concludes that the ALJ did not commit harmful error in discounting Plaintiff's testimony because the ALJ provided at least one clear and convincing

reason for doing so. *See Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's decision to discount the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence for rejecting [the] testimony as not credible"); *cf. Gilliland v. Saul*, 821 F. App'x 798, 799 (9th Cir. 2020) (noting that an ALJ's errors are harmless if the ALJ "provided at least one valid reason to discount [the] testimony") (citation omitted).

## II.    MEDICAL OPINION EVIDENCE

### A.    Applicable Law

Plaintiff filed her applications in February 2018. (Tr. 22.) "For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. 416.920c governs how an ALJ must evaluate medical opinion evidence." *Tyrone W. v. Saul*, No. 3:19-cv-01719-IM, 2020 WL 6363839, at *6 (D. Or. Oct. 28, 2020) (citation omitted); *see also Linda F. v. Saul*, No. 20-cv-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020) ("Because [the] plaintiff filed her applications after March 27, 2017, new regulations apply to the ALJ's evaluation of medical opinion evidence.").

Under the new regulations, the Commissioner will "no longer give any specific evidentiary weight," let alone controlling weight, "to any medical opinion." *See Allen O. v. Comm'r of Soc. Sec.*, No. 3:19-cv-02080-BR, 2020 WL 6505308, at *5 (D. Or. Nov. 5, 2020) (simplified). Instead, as this Court recently explained, "the ALJ considers all medical opinions and evaluates their persuasiveness based on supportability, consistency, relationship with the claimant, specialization, and 'other factors.'" *Robert S. v. Saul*, No. 3:19-cv-01773-SB, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021) (simplified).

"The new regulations require ALJs to articulate how persuasive they find all of the medical opinions and explain how they considered the supportability and consistency factors."

*Id.* (simplified). At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.* (quoting *Linda F.*, 2020 WL 6544628, at *2). Accordingly, "the more relevant the objective medical evidence and supporting explanations presented and the more consistent with evidence from other sources, the more persuasive a medical opinion or prior finding." *Id.* (quoting *Linda F.*, 2020 WL 6544628, at *2).

"The ALJ may but is not required to explain how other factors were considered," including (1) the "relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination)," (2) "whether there is an examining relationship," (3) specialization, and (4) "other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Id.* The ALJ, however, is "required to explain 'how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical,'" and courts "must 'continue to consider whether the ALJ's analysis has the support of substantial evidence.'" *Id.* (citations omitted).[4]

///

---

[4] The Commissioner argues that the new regulations "govern" here and "supersede case law developed under the prior regulatory scheme," *i.e.*, case law requiring an ALJ to provide clear and convincing or specific and legitimate reasons for discounting a medical opinion. (Def.'s Br. at 6-7.) Consistent with its prior decisions, the Court will consider whether the ALJ adequately addressed the persuasiveness, including the supportability and consistency, of medical opinion evidence, because "[t]he Ninth Circuit has not yet addressed whether or how the new regulations alter the standards set forth in prior cases for rejecting a medical opinion," and "the new regulations still require the ALJ to explain [his] reasoning for discounting a medical opinion . . . to allow for meaningful judicial review." *Robert S.*, 2021 WL 1214518, at *4 (citations omitted).

### B.    Analysis

#### 1.    Dr. Davidson's Opinion

Dr. Davidson performed a four-part evaluation of Plaintiff in June and July 2019 (Tr. 1656), and issued a report in August 2019 (Tr. 1656-60), and an addendum in January 2020. (Tr. 1653-55.)

In her initial report, Dr. Davidson noted that she reviewed medical records regarding Plaintiff's physical impairments, received reports from Plaintiff's "lifetime childhood friend" about Plaintiff's "seizure disorder and resultant brain trauma since early childhood" and Plaintiff "always [being] slow due to her seizures and brain trauma," administered tests, and observed Plaintiff's behavior during her four exam sessions. (Tr. 1656-57.) Dr. Davidson stated that Plaintiff's test results revealed that her full-scale intelligence quotient score was in the "extremely low range," processing speed score was in the "extremely low range," and "scores reflect organicity secondary to her seizure disorder, brain injury and complicated medical history." (Tr. 1658.)

Dr. Davidson's diagnoses included major neurocognitive disorder due to a traumatic brain injury, moderate to severe persistent depressive disorder "with [a]nxious [d]istress," attention deficit hyperactivity disorder, developmental coordination disorder, and somatic symptom disorder. (Tr. 1659.) In terms of treatment recommendations and Plaintiff's ability to work, Dr. Davidson determined that it was "highly unlikely" that Plaintiff "could maintain full-time employment due to her cognitive, emotional, attention/concentration issues, memory problems, and pain," and recommended that Plaintiff "continue to visit with her neurologist to follow up on her seizure disorder, brain trauma symptoms and other cognitive challenges." (Tr. 1660.)

In her addendum, Dr. Davidson recounted the above diagnoses. (Tr. 1653.) She also opined that Plaintiff "would be unreliable and unable to sustain" a "simple job on an eight hour per day, five days a week or equivalent schedule," lacks the ability to "maintain concentration, persistence and pace to perform job related tasks for up to an hour at a time and for up to six hours out of an eight hour day," lacks the ability to work in proximity to others, and "will be unreliable" in terms of "normally accepted standards of punctuality and attendance." (Tr. 1653-54.)

### 2. Disposition

Plaintiff argues that the ALJ erred by failing to provide legally sufficient reasons for discounting Dr. Davidson's opinion and, relatedly, in assessing the severity of Plaintiff's mental impairments at step two. (Pl.'s Opening Br. at 19-24.) Plaintiff asserts that the ALJ's "error in evaluating Dr. Davidson's opinion and supporting evidence is prejudicial, because the ALJ dismissed Plaintiff's severe mental impairments at [s]tep [t]wo and did not account for them in the RFC." (*Id.* at 23.) The Court concludes that the ALJ appropriately discounted Dr. Davidson's opinion, and did not commit any prejudicial error in evaluating Plaintiff's mental impairments at step two.

The ALJ discounted Dr. Davidson's opinion on the ground that it "suggests dramatic worsening" of Plaintiff's "mental health since her [May 16, 2018] examination by" Gregory Nicholson, M.D. ("Dr. Nicholson"), a board certified psychologist, even though the record includes notations from treating providers suggesting that "no such worsening occurred," such as "regular notations of normal thought processes, memory, and attention[.]"(Tr. 29.) On the prior page of his decision, the ALJ explained why he found "persuasive" Dr. Nicholson's opinion, as well as the non-examining state agency psychological consultants' findings. (Tr. 28.) Furthermore, the ALJ observed that "just 10 days prior to the beginning of Dr. Davidson's

assessment," Sudhir Malik, M.D. ("Dr. Malik"), an adult and pediatric neurologist who evaluated

Plaintiff and performed tests, documented a "grossly [normal] mental status examination[.]"

(Tr. 29.)

The ALJ's findings were reasonable and supported by substantial evidence. As the ALJ

noted, a May 1, 2018 mental status examination revealed that Plaintiff's "short and long term

memory appear intact," fund of knowledge/intelligence "appears average," insight and judgment

were "fair," and thought processes were "linear and goal directed, not tangential, not

circumstantial, [and] no preservation," and when asked about her reported history of seizures,

Plaintiff stated that the "first [was] at 2 y.o.; [the] last one at 19 y.o.," i.e., in the early 1980s.

(Tr.  714.) Similarly, on May 16, 2018, Dr. Nicholson stated that based on his exam, which

included a clinical interview and record review, Plaintiff "appeared to be of average

intelligence," Plaintiff's "fund of knowledge was grossly intact," Plaintiff was able to "spell

'world' both forward and backward," "perform serial threes," "follow [the] conversation well,"

and "correctly state[] that 80 cents would be received from a dollar if two oranges were bought at

10 cents each," Plaintiff can handle "detailed and complex [job] instructions," and Plaintiff's

"ability to maintain concentration and attention, persistence and pace is mildly limited."

(Tr. 649-53.)

On May 18, 2018, Plaintiff's mental status examination again showed that her "short and

long term memory appear intact," fund of knowledge/intelligence "appears average," insight and

judgment were "fair," and thought processes were "linear and goal directed, not tangential, not

circumstantial, [and] no preservation." (Tr. 678.) The following month, on June 20, 2018,

Plaintiff answered, "Not at All" with respect to any "[t]rouble concentrating," "looked

improved," and presented as the type of person who "just needs to talk to help herself feel

better," and Plaintiff's affect was "congruent," insight and judgment were "fair," and thought processes were "linear and goal directed, not tangential, not circumstantial, [and] no preservation." (Tr. 710.)

The next year, on June 12, 2019, Dr. Malik noted that Plaintiff's complaints included migraines, "recurrent seizures, uncertain type, etiology," and "uncontrolled anxiety/depression," and Plaintiff "reportedly [had multiple] 'abnormal'" electroencephalograms ("EEG") during her childhood, "[y]et [the] present EEG [is] completely normal." (Tr. 1241-42.) Dr. Malik also noted Plaintiff's mental status exam demonstrated that her "attention span" and "recent and remote memory" were "intact," her judgment and insight were "fair," she was able to follow three-step commands and "read and write," and she exhibited "[n]o tangential thought processes." (Tr. 1242.)

In contrast to these medical records, during her testing sessions in June and July 2019, Dr. Davidson stated that Plaintiff's "attention span was short," Plaintiff "was not focused," Plaintiff had "a very hard time concentrating" and "problems concentrating," and had "to make herself focus," Plaintiff's test results reflected "great impairment in her memory," which Dr. Davidson attributed to "organicity secondary to her seizure disorder, brain injury and complicated medical history," and Plaintiff answered less than a quarter of the questions on a questionnaire because she was "unable to concentrate and had trouble sitting to do the reading and marking." (Tr. 1657-59.)

In light of the foregoing, the ALJ's discounting of Dr. Davidson's opinion was reasonable, supported by substantial evidence (i.e., more than a mere scintilla of evidence, but less than a preponderance), and consistent with case law in this circuit. *See Padilla v. Saul*, 852 F. App'x 277, 278 (9th Cir. 2021) (holding that the ALJ did not err in discounting an examining

psychologist's opinion and noting that the claimant denied confusion issues "only days before" the psychologist reported issues "understand[ing] certain things," the ALJ "noted [that a different] examining psychologist found that [the claimant] had normal concentration, while [the psychologist at issue] found moderate-to-severe limitation," and the ALJ "gave significant weight to the agency consultants' opinions, which were inconsistent with [the psychologist's] opinion").

Plaintiff disagrees and argues that Dr. Nicholson's "conflict[ing]" opinion was not a "legitimate basis for rejecting Dr. Davidson's opinion, because [the ALJ] fail[ed] to explain why Dr. Nicholson's opinion should be entitled to greater weight." (Pl.'s Opening Br. at 21.) Plaintiff fails to address the ALJ's statement that Plaintiff's treating providers' notations reflected "no such worsening" of her mental health symptoms between Dr. Nicholson's May 16, 2018 examination and Dr. Davidson's testing in June and July 2019, or reasons for finding persuasive Dr. Nicholson's opinion. (*Id.* at 21-22.) Rather, Plaintiff cites medical records and findings that Plaintiff asserts the ALJ "failed to acknowledge" and "support[] Dr. Davidson's opinion[.]" (*Id.* at 22.)

Plaintiff has failed to demonstrate the ALJ committed reversible error in (1) discounting Dr. Davidson's opinion based on conflicting opinion and objective evidence, which does not reflect a "dramatic worsening" in Plaintiff's mental health symptoms, or (2) evaluating the severity of Plaintiff's mental impairments at step two. Plaintiff does not address significant findings underlying the ALJ's decision to discount Dr. Davidson's opinion and findings at step two, and for the most part, advocates for alternatives to the ALJ's rational interpretation of the record. *See generally Crawford v. Berryhill*, 745 F. App'x 751, 753 (9th Cir. 2018) (rejecting objections to the ALJ's findings because they "amount[ed] to advocating for alternatives to the

ALJ's rational interpretation of the record and therefore [did] not demonstrate error"); *Wilcox ex rel. Wilcox v. Colvin*, No. 13-2201-SI, 2014 WL 6650181, at *5 (D. Or. Nov. 24, 2014) (explaining that the claimant's "alternative interpretation of the evidence [was] insufficient to overturn the ALJ's findings"); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

For example, it is noteworthy that although Plaintiff claims that the ALJ impermissibly "cherry-picked," "ignore[d]," and "disregard[ed]" evidence in evaluating the severity of Plaintiff's mental health impairments at step two and discounting Dr. Davidson's opinion (*see* Pl.'s Reply at 3-5; Pl.'s Opening Br. at 23-24), Plaintiff fails to address a significant finding that the ALJ offered in support of his evaluation of the severity of Plaintiff's mental health disorders: "During her sessions, the claimant repeatedly told her therapist that she was attending therapy because it 'looks good' on disability applications." (Tr. 27, citing, *inter alia*, Tr. 733, 1185, 1224, 1259).

The ALJ's citations show that on August 13, 2018, two years after the alleged onset date, Plaintiff's provider noted that Plaintiff reported she had her "needs paid for by her mother and then complain[ed] about not having money," she "needs to work (in massage)" but "had to be careful what she says" because her friend was "helping [her] get disability" and "what she says . . . may disqualify her from getting disability," and her friend "encourage[d] her to come to therapy because it 'looks good' when you apply for disability." (Tr. 733.) Plaintiff's provider then offered opinions that support the ALJ's finding that Plaintiff does not suffer from a severe mental impairment, as well as the ALJ's decision not to fully credit opinions about Plaintiff's severe mental health limitations: "[Plaintiff] does not have a severe mental illness and mostly has

characterological issues[.]. . . . [She] is not really open to any real feedback . . . [and] is dismissive of much feedback. She would like to attend [once a week] but is not in need of that level of intervention." (*Id.*)

Similarly, on September 28, 2018, Plaintiff's provider noted that Plaintiff reported that she was "feeling positive" and met a man who "convinced her to take a course called 'breaking the habit of being yourself' by Dr. Joe Dispenza," and "stated that she 'should have a psychiatric evaluation so it looks good for disability' and then 'I don't have to take the medication.'" (Tr. 1259.)

On October 8, 2018, Plaintiff's provider noted that Plaintiff had "just come back from Desert Hot Springs where she had been taken by one of her friends to go and relax for the weekend," and "mentioned that her disability application has been submitted and that she needs to continue to come to therapy during the application process." (Tr. 1185.) Plaintiff's provider also noted that Plaintiff would "not be referred for [p]sychiatry as she stated she will not take the medications if prescribed," and "appeared under the influence of a sedating medication/drug . . . [and was] moving her head back and forth scanning the room." (Tr. 1185-86.)

The next week, Plaintiff's provider noted that "[Plaintiff] states she is coming to [mental health] therapy [because] her friend Nicki said she should while applying for [d]isability." (Tr. 1224; *see also* Tr. 1398, August 24, 2018, "She stated 'it looks good if I am seeing you' and then would complain about her friend who is 'trying to get me disability.'"; Tr. 1321, March 15, 2019, Plaintiff "didn't want to talk about details" with her new provider because she had "developed a fear of what is said in session after getting records from a previous therapist that

she wasn't happy about," and Plaintiff "reiterated her desire for [her] current therapist's records as well").

Contrary to Plaintiff's argument, the ALJ's step two findings and record citations do not reflect that he "disregard evidence of disability" or "largely ignore[]" evidence supporting Dr. Davidson's opinion about severe mental impairments. (Pl's Opening Br. at 23; Pl.'s Reply at 5; *see also* Pl.'s Opening Br. at 13-15, citing Tr. 733, 1184, 1225, and 1259 for certain "positive clinical findings," including "sedation" that the provider attributed to an unknown "medication/drug," but failing to address the reports that undermine mental health complaints).

Finally, the Court notes that in discounting Dr. Davidson's opinion, the ALJ emphasized that Dr. Davidson appeared to accept Plaintiff's and an unnamed friend's "subjective reports" about, among other things, a "history of seizures [and] brain injury" as "reasonable explanations" for Plaintiff's poor test results, even though the record does not include any "objective finding[s]" supporting these impairments. (Tr. 29; *see also* Tr. 1656-60, Dr. Davidson documented reports from Plaintiff's "lifetime childhood friend" about Plaintiff's history of a "seizure disorder and resultant brain trauma" and "always [being] slow due to her seizures and brain trauma," and later determined that several poor scores reflected "organicity secondary to her seizure disorder, brain injury").

Plaintiff argues that the ALJ mischaracterized the record in "relying upon the fact that [she] was not suffering [from] a seizure disorder or undergoing treatment for this medical problem any longer," and her records and mother's testimony show that as a child, she suffered from a "seizure disorder and difficulties with her brain. (Pl.'s Opening Br. at 21, citing Tr. 311, 674, 714.)

///

Plaintiff's mother's testimony and medical history (the latter of which is based on Plaintiff's self-reports, which the ALJ properly discounted) provide some support for Plaintiff's argument but also demonstrate that she has provided conflicting information about her alleged seizure history. (*See* Tr. 311, March 14, 2018, Plaintiff's mother's reported that Plaintiff has had "lifelong issues since her difficult birth causing oxygen deprivation," "always been 'slow' to develop coordination [and] thinking abilities," and a "long history of cognitive problems"; *compare* Tr. 674, April 26, 2018, Plaintiff's active problem list included "[r]eccurent seizures," with a "last prior" seizure "5 y[ea]rs ago" in 2013, *with* Tr. 713-14, May 1, 2018, Plaintiff addressed "health issues such as . . . seizures (first at 2 [years old]; last one at 19 [years old, i.e., in the early 1980s])"; *see also* Tr. 25, the ALJ noted that there was "a purported seizure at a nightclub" and emergency room visit in 2013, but it was actually "a syncopal event secondary to marijuana use, rather than a seizure"; Tr. 1117-20, April 20, 2013, an emergency room provider stated that Plaintiff reported a history of "seizures as a child" and "[l]ikely" suffered a "syncopal episode" unrelated to any seizure disorder when she lost consciousness at a bar after "smoking pot," drinking alcohol, falling "down on the dance floor," and hitting her "head on the bathroom sink").

As the ALJ noted, the record also includes objective evidence that appears to undermine any subjective reports about a history of seizures and related trauma. (*See* Tr. 1241, 1389, a neurologist referred to complaints of migraines and "recurrent seizures, uncertain type, etiology" and stated that Plaintiff "reportedly [had multiple] 'abnormal'" EEGs during her childhood, "[y]et [the] present EEG [is] completely normal"). Given the inconsistent and at times contradictory evidence, the ALJ reasonably discounted Dr. Davidson's opinion to the extent that

she relied on Plaintiff's and an unnamed friend's self-reports about seizures and related brain trauma.[5]

For all of these reasons, Plaintiff has failed to demonstrate that the ALJ committed harmful error in evaluating her mental impairments at step two, or in discounting Dr. Davidson's opinion. *See Jenkins v. Colvin*, No. 1:15-cv-01135, 2016 WL 4126707, at *10 (E.D. Cal. Aug. 2, 2016) (noting that "the party attacking the agency's determination bears the burden of proving any error was harmful") (citation omitted); *see also Gilliland*, 821 F. App'x at 799 (explaining that any errors are harmless if the ALJ "provided at least one valid reason" for not fully crediting evidence) (citation omitted); *Kilbourne v. Saul*, 773 F. App'x 401, 402 (9th Cir. 2019) (holding that the ALJ did not err in declining to fully credit an examining psychologist's opinions or "relying upon evidence of [the claimant's] secondary gain behavior," and that even if "the ALJ erred in relying upon evidence of secondary gain on [the claimant's] part, the ALJ provided other valid reasons for discounting [the examining psychologist's] opinion, rendering any error harmless").

## CONCLUSION

Based on the foregoing reasons, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 10th day of March, 2022.

*Stacie F. Beckerman*

_____

HON. STACIE F. BECKERMAN
United States Magistrate Judge

_____

[5] It is not clear if this is the same friend who advised Plaintiff on the disability application process.

PAGE 25 – OPINION AND ORDER